Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 3855 | DATE | August 3, 2004 |
| CASE TITLE | Mor-Cor Packaging Products   v   Innovative Packaging | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOJune 14, 2004CKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ■ Status hearing set for 8/12/04, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for partial summary judgment on liability on the breach of contract claim is granted, and defendant's cross-motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 0 5 2004 date docketed | |
| | Docketing to mail notices. | | | 86 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 2004 AUG -4 AM 11:48 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOR-COR PACKAGING PRODUCTS, INC., an Illinois corporation, | )<br>)<br>) |
| Plaintiff-Counterdefendant, | )<br>) |
| v. | ) No. 99 C 3855<br>) |
| | ) Judge Robert W. Gettleman |
| INNOVATIVE PACKAGING CORP., a Delaware corporation, | )<br>)<br>) |
| Defendant-Counterplaintiff, | )<br>) |
| v. | ) |
| MARTIN FIELD, | ) |
| Counterdefendant. | )<br>) |

DOCKETED
AUG 0 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Mor-Cor Packaging Products, Inc. ("Mor-Cor") initiated the instant breach of contract suit against defendant Innovative Packaging Corp. ("IPC") arising from defendant's alleged failure to fulfill its obligations under the parties' sales agreement. Defendant counterclaimed, alleging that plaintiff had breached its obligations under the agreement. Following a bench trial before Judge Andersen and judgment in plaintiff's favor, defendant appealed to the Seventh Circuit (and plaintiff cross-appealed a discovery matter relating to the district court's refusal to award fees as a sanction for defendant's refusal to admit a fact).

On appeal, Mor-Cor Packaging Products, Inc. v. Innovative Packaging Corp., 328 F.3d 331 (7th Cir. 2003), the Seventh Circuit affirmed the district court's denial of sanctions, but remanded the case for further proceedings on the question of whether plaintiff breached his contract with defendant. Specifically, the court focused on the "cure" provision of the parties'



agreement, which required thirty days notice and an opportunity to cure any breach of the contract prior to termination. The Seventh Circuit noted that, although the district court clearly thought that defendant violated the cure provision, the district court did not clearly articulate whether plaintiff had also breached certain provisions of the agreement, which would necessarily impact plaintiff's recovery of damages. The court of appeals remanded the instant case to this court for further proceedings on the latter issue in particular.

The parties have agreed that this court should decide the issue of defendant's liability on the record developed before Judge Andersen through cross-motions for partial summary judgment. For the reasons stated herein, the court grants plaintiff's motion for summary judgment and denies defendant's motion.

## FACTS[1]

Plaintiff Mor-Cor is in the business of acting as a sales representative in the corrugated sheet paper industry. At all relevant times, Martin Field was the president and sole employee and shareholder for plaintiff. Defendant IPC manufactures and distributes corrugated sheet paper. On or about July 3, 1997, plaintiff and defendant entered into a Manufacturer-Agent Agreement (the "Agreement"), under which plaintiff agreed to act as defendant's exclusive sales representative to various customers in the Metropolitan Chicago area (which were listed on Exhibit A to the agreement).

The Agreement, which is governed by Wisconsin law, provides that:

The Agent [plaintiff] agrees to act in the best interest of the Company [defendant] in respect of its duties as Company's exclusive sales representative in the sale of Corrugated

---

[1] These facts are taken from the transcripts and admitted exhibits of the prior trial of this matter, to which the parties have stipulated for the purposes of these proceedings on remand.

2

Sheets within the Territory and to use its best efforts to promote the sale of such Corrugated Sheets. In that regard, Agent agrees to abide by and comply with all sales policies and operating regulations of Company as issued from time to time to all sales people of the Company and will not obligate or contract on behalf of Company without first having received authority to do so from an executive of Company. Agent further agrees not to represent any manufacturer of Corrugated Sheets in competition with Company or to otherwise sell Corrugated Sheets within the Territory. Agent will also assist in the collection of past due accounts owed to the Company from Customers located within the Territory.

Section 2.2.1 provides that the Agreement may be terminated "by a party if the other party fails to perform any of its obligations herein and such failure is not remedied by the other party within thirty (30) days of the other party's receipts of a written notice describing said failure." The Agreement further states that it may be terminated by a party "without any delay or other formality" if the other party has its assets (or a substantial part thereof) levied upon or seized or managed by a third party, or if the other party: (i) makes or seeks to make any compromise, assignment or other arrangement with or for the benefit of its creditors; (ii) files a petition in bankruptcy; (iii) is adjudicated and declared bankrupt or is insolvent; (iv) has a third party appointed to manage or distribute its assets or to liquidate or wind up its business; (v) institutes or has instituted against it proceedings under any bankruptcy, liquidation, winding up or insolvency legislation; or (vi) authorizes or acquiesces to any of the foregoing. The Agreement also provided that defendant could terminate the Agreement "without any delay or other formality" if Mr. Field was convicted of an economic offense (such as fraud) or became incapacitated, or if defendant was unable to meet its obligations "by reason of <u>force majeure</u>" such as acts of God, fires, explosions, strikes, lockouts, among other things.

On July 1, 1999, defendant sent a letter to plaintiff, asserting that plaintiff had failed to perform its obligations under the Agreement. Specifically, defendant's letter stated that plaintiff:

3

(1) had failed to devote its best efforts to promote the sale of defendant's products; (2) failed to service the value-added portion of the corrugated sheet market; (3) quoted prices and discounts without defendant's authorization and in contravention of prices given to plaintiff; (4) authorized non-payment of freight charges by customers without defendant's permission; and (5) failed to assist in the collection of past due accounts of defendant's customers and quoted payment terms that were not authorized by defendant.

In a letter dated July 7, 1999, plaintiff responded that it had not breached the terms of the Agreement, and "[if] in any manner Mor-Cor did fail to perform (which would have been completely inadvertent), Mor-Cor assures you that it intends to continue to fully perform and honor the Agreement." In a July 29, 1999, reply letter, defendant reiterated its position that plaintiff had breached the Agreement, and further stated that, as a result of plaintiff's "unwillingness to perform," plaintiff "may anticipate the Agreement will terminate at the expiration of the 30 days."

On August 9, 1999, plaintiff wrote to defendant, seeking confirmation as to whether Mor-Cor had been terminated effective July 1, 1999. On August 10, 1999, defendant sent a letter to plaintiff, terminating the Agreement "effective immediately." In addition to referencing the five grounds enumerated in defendant's July 1, 1999, letter, defendant further stated:

> Agent has failed to act in the best interests of Company in respect of its duties as Company's exclusive sales representative within the Territory, by acquiring or attempting to acquire a business in competition with Company's customers. Agent's competitive activities are a violation of the Agreement, and are damaging to Company.

At trial, John Lingle, defendant's president, testified that in mid-July, he heard a rumor that Field was attempting to purchase a corrugated sheet plant. In late July, Lingle contacted

Field to ask him about the rumor, and Field basically responded, "It is none of your business." During that conversation, Lingle did not tell Field that he considered such a purchase to be a breach of contract or conflict of interest.

Lingle further testified that during the first week of August, one of his customers, John Carman, informed him that Field had recruited one of Carman's employees to work for him at Jet Age Container, a corrugated box company in the Chicago area, confirming the rumor Lingle had heard. Lingle subsequently sent the August 10, 1999, letter terminating the Agreement. Lingle testified that, had the Jet Age incident never occurred, defendant "certainly" would not have terminated the Agreement in August.

Carman testified that, as far as he was concerned, Field "couldn't be an effective salesman" for defendant because Jet Age Container was one of Carman's competitors, and "we certainly wouldn't want to deal with anybody that's – to help them in any way – to get more competitive against us." He further explained that he would not want competitors learning of special projects that he was running for his customers, even though that information was made available to sales representatives. Carman also testified that, at the time he learned Field was trying to recruit his employees, he was irritated, but that he does not hold it against Field personally any more.

Two other witnesses, Christopher Woods and Bill Heymann, also testified as to whether they would be concerned if they had learned that Field or plaintiff acquired an interest in Jet Age. Woods, Vice President of InnerPac, testified that such a revelation would not have affected him continuing to use Mor-Cor as his sales representative. He added, however, that if Field had an ownership interest in, or was running, a company that competed directly with InnerPac, it would

5

not be alright for Field to continue as InnerPac's sales representative. Heymann, President of United Container Corporation, testified that Field's attempts to acquire Jet Age Container would not bother him.

Field testified that his original intention, prior to the July 1, 1999, letter, was to purchase Jet Age Container for his son and son-in-law, so that they could build equity in a business. After receiving the July 1 letter, however, and believing that he was about to be terminated, Field decided to become more involved in Jet Age Container. Field testified that the Jet Age Container deal had fallen apart as of the date of his August 10, 1999, termination from IPC, but was resurrected shortly thereafter and closed on October 4, 1999.[2] At trial, Field stated that he was managing Jet Age and owned one percent of the company.

## **PROCEDURAL POSTURE**

At the conclusion of trial, the district court heard additional argument from the parties. During that exchange, the judge noted:

> I do not believe that Innovative Packaging Corporation terminated [the Agreement] in accordance with the provisions of the contract. Clearly they did not give Mor-Cor and Mr. Field 30 days – a written notice and 30 days notice to explain or back off of the Jet Age investment that he made. And basically, based on the testimony, Innovative Packaging Corp. had actually decided not to terminate him and Mor-Cor because of the offenses set forth in their letter at the beginning of July....
>
> I am not convinced that the parties would have had a productive relationship beyond the three-year term [of the Agreement]. It had already begun to deteriorate and the plaintiff had already begun to hedge his bets by initiating discussions to acquire a company which was going to take substantial amount of effort on his part, even if it wouldn't have eaten up all of his efforts. We will never know if it would have undermined his salesmanship so much that he wouldn't have sold anything. But I think that your – your son and son-in-law probably would have required enough oversight at the beginning so that your sales

---

[2]Consistent with Field's testimony, the effective date of the Asset Purchase Agreement between Field and Jet Age was revised from July 31, 1999, to August 20, 1999.

6

wouldn't have been at the level that IPC demanded it. But, once again, that is a [fact] we will never know....

The findings of fact and conclusions of law subsequently submitted by the parties and adopted by the district court provided that "IPC did not give MorCor an opportunity to remedy the anticipated acquisition of Jet Age, as required by Paragraph 2.2.1 of the Agreement," and that IPC breached the Agreement by terminating the Agreement on August 10, 1999. The conclusions of law further stated that, "[T]his Court does not conclude based upon the evidence presented that Mr. Field's proposed acquisition of Jet-Age constituted a breach." The district court awarded, inter alia, "$277,412.00 representing 17 months left on the three-year term as of the date of the termination of Mor Cor (July 1, 1999)."

On appeal, the Seventh Circuit stated that it was clear that the district court thought that IPC had breached the cure provision in Paragraph 2.2.1 of the Agreement, however:

> a more important question, the answer to which we cannot dig out of the district judge's oral statements or terse written decision, is whether Field's proposed acquisition of Jet Age was a breach of his contract with IPC, because, if it was, then Field has failed to prove substantial damages and almost certainly was overcompensated.

On this latter point, the Court of Appeals noted that "the evidence is in dispute, and the district judge's opinion, as we have noted, is both internally inconsistent and inconsistent with his oral findings. Further proceedings will be necessary in the district court."

## **DISCUSSION**

This court's reading of the Seventh Circuit opinion suggests that the purpose of the remand in the instant case was to determine whether <u>plaintiff</u> breached the Agreement by Field's attempt to acquire Jet Age and the effect, if any, that such a breach would have on its damages.

7

The focus of the parties' motions for summary judgment, however, is on whether <u>defendant</u> breached the Agreement by failing to give thirty days notice and an opportunity to cure.

Defendant argues that, as a matter of "settled law," defendant was not required to give thirty days notice-to-cure before terminating the Agreement because plaintiff breached its fiduciary duty to defendant. According to defendant, it would be "repugnant to require IPC to retain as its agent one who has breached his fiduciary duties of full disclosure and avoidance of conflicts, even if the latter were arguably curable." Plaintiff responds that the Seventh Circuit opinion clearly established that Mor-Cor was entitled to notice and an opportunity to cure and, alternatively, that a fact question exists as to whether any fiduciary duty was in fact breached.

The appellate opinion neither explicitly affirmed nor reversed the district court's judgment that defendant breached the cure provision. See id. at 335 ("All that is clear... is that the judge thought that IPC had violated the cure provision. Whether or not he was correct about that, a more important question... is whether Field's proposed acquisition of Jet Age was a breach of his contract with IPC."). The Seventh Circuit did conclude, however, that none of the exceptions to the 30-day notice provision applied in the instant case. Id. at 333.

Moreover, aside from affirming the district court's denial of sanctions, the bulk of the court of appeals' analysis was directed to criticizing the district court's resolution of the "central" fact question in the case: whether Field could fulfill his obligation to use his best efforts to sell IPC's corrugated sheets at the same time that he was managing a company that competed with IPC's customers. Id. As the Seventh Circuit explained, if the acquisition of Jet Age constituted a breach of contract, plaintiff "has failed to prove substantial damages and almost certainly was

8

overcompensated....[3] If he was deprived of just one month's profits by IPC's breach, the award for lost profits would plummet to $16,000." Id. at 335. Read as a whole, then, it appears that the court of appeals was not disturbed by Judge Andersen's finding that defendant breached the cure provision of the Agreement.

Even if this court concluded that the court of appeals left that question open, it would still agree with Judge Andersen that defendant breached the cure provision. Lingle's testimony established that the five reasons stated in the July 1, 1999, letter were not the basis for plaintiff's termination, and that defendant "certainly" would not have terminated the Agreement in August if the Jet Age incident had never occurred. When Lingle discussed Field's acquisition of another company, he never indicated to Field that he thought that there was a conflict, or that Field could not continue as a sales representative for IPC if he acquired the other company.

Plaintiff was not put on notice that the Jet Age acquisition was cause for termination until the August 10, 1999, termination letter, which stated that "Agent has failed to act in the best interests of Company in respect of its duties as Company's exclusive sales representative within the Territory, by acquiring or attempting to acquire a business in competition with Company's customers." This clearly violated § 2.2.1 of the Agreement, which provides for termination by a party "if the other party fails to perform any of its obligations herein and such failure is not remedied by the other party within thirty (30) days of the other party's receipts of a written notice describing said failure." Among other things, the Agreement required plaintiff to "act in the best

---

[3]The Seventh Circuit's use of the term "overcompensated" (as opposed to "wrongly compensated," or something to that effect) leads the court to conclude that their opinion was not meant to imply that defendant could be found liable only if plaintiff's acquisition constituted a breach.

interest of the Company [IPC] in respect of its duties as Company's exclusive sales representative in the sale of Corrugated Sheets within the Territory and to use its best efforts to promote the sale of such Corrugated Sheets." The plain language of the August 10, 1999, letter indicates that defendant thought that plaintiff's potential acquisition was a violation of its obligation to act in the "best interest" of defendant. That being the case, defendant was required by § 2.2.1 of the Agreement to give thirty days notice and opportunity to cure.

Defendant's argument that plaintiff also breached its fiduciary duty to defendant does not compel a contrary result. Assuming arguendo that the testimony of Carman and Woods establishes a breach of fiduciary duty, the fact remains that the Agreement requires 30 days notice and an opportunity to cure when a party seeks to terminate the Agreement because of the other party's failure to meet its obligations under the Agreement. "Breach of fiduciary duty" is not among the exceptions to that requirement.

The principal case relied upon by defendant, Union Miniere, S.A. v. Parday Corp., 521 N.E.2d 700 (Ind. App. 1988), does not persuade the court otherwise. In that case, the plaintiff and defendant entered into an agreement under which the defendant was to manage the plaintiff's mining business. The parties' agreement required the defendant to act for plaintiff's benefit and use all of its best efforts to maintain a certain level of coal production. Id. at 702. The plaintiff terminated the agreement immediately, without complying with the sixty day notice provision, after the defendant and its employees "engaged in a series of acts... which adversely affected [plaintiff's] business." Id. Among other things, plaintiff alleged that defendant's attorney "drafted and delivered correspondence to the Indiana Department of Natural Resources arguing against the renewal of [plaintiff's] mining permit." Id. at 703.

The trial court in <u>Miniere</u> granted a motion for partial summary judgment in favor of the agent, concluding that the notice provision was unambiguous, notwithstanding a factual dispute as to whether the agent breached its fiduciary duty. <u>Id.</u> at 702. The appellate court, <u>id.</u> at 703, reversed, however:

> Although we agree with the trial court that the language of the notice and cure provision clearly and unambiguously required 60 days notice before termination, we conclude that its application of contract law was inappropriate in this case.... When an agent has acted to undermine his principal's business, the principal will not be forced to endure the stated contractual period before discharging him. To hold otherwise would afford the disloyal agent the opportunity to continue rather than cure his destructive effort. Such a result would be repugnant.

In reaching that conclusion, the appellate court noted, "[Defendant's] alleged attempts to dissuade the Department of Natural Resources from renewing Bicknell's mining permit are of a nature not easily curable." <u>Id.</u> at 703, n.4.

Section 409 of the Restatement (2d) of Agency, relied on by the <u>Union Miniere</u> court, provides:

> A principal is privileged to discharge before the time fixed by the contract of employment an agent who has committed such a violation of duty that his conduct constitutes a material breach of contract or who, without committing a violation of duty, fails to perform or reasonably appears to be unable to perform a material part of the promised service, because of physical or mental disability.

Neither the plain text of Section 409, nor the illustrations contained therein, addresses whether a "material breach" of contract overrides a notice and cure provision. Rather, the plain text of Section 409 provides only that a principal may discharge an agent prior to the time fixed by the contract of employment if, (1) the agent commits a violation of duty that constitutes a material breach, or (2) the agent is unable to perform a material part of the contract due to

11

physical or mental disability. Significantly, although the Agreement at issue in the instant dispute explicitly provides an exception to the notice and cure provision in the event of "incapacity" or "inability" of the agent, no such exception is made for breach of fiduciary duty.

Under Wisconsin law, which was not at issue in the Union Miniere case, it is not clear that a material breach necessarily relieves a party of its obligations to comply with a contract's notice and cure provision prior to termination. Cf. Mor-Cor, 328 F.3d at 336 ("There is a difference between believing that your contract partner has committed a material breach and wanting to terminate your contract with him because of it. Many, we suspect most, material breaches are forgiven, either in the hope that they will be cured or because self-help (as through termination) or legal remedies would cost the victim of the breach more than they were worth."); Process Research Corp. v. Hyprotech Ltd., 2001 WL 34379470 (W.D.Wis. June 14, 2001) ("Because plaintiff did not provide defendant with written notice of these alleged breaches and an opportunity to cure the alleged deficiencies, plaintiff may not terminate the agreement for substantial and material breaches.").

More importantly, unlike the breach in Union Miniere, the alleged breach in the instant case appears to have been curable. As plaintiff notes, had defendant brought the alleged breach to plaintiff's attention, plaintiff could have: (1) explained to defendant that the acquisition had fallen apart; (2) proceeded with the acquisition through his children only, rather than retaining an ownership and/or management interest for himself; or (3) abandoned the acquisition entirely. Field's uncontradicted testimony in fact established that he had resuscitated the deal only after being terminated by defendant.

The plain terms of the Agreement required defendant to give thirty days notice and an opportunity to cure before terminating the Agreement as a result of plaintiff's failure to act in defendant's best interest. Defendant's belated attempt to recast that breach as a breach of fiduciary duty does not, in this court's judgment, permit defendant to circumvent that requirement. Thus, the court grants plaintiff's motion for summary judgment on liability.

## CONCLUSION

For the reasons stated herein, the court grants plaintiff's motion for partial summary judgment on liability on the breach of contract claim and denies defendant's cross-motion for summary judgment. The parties are directed to appear for a report on status on August 12, 2004, at 9:00 a.m.

**ENTER:** **August 3, 2004**

Robert W. Gettleman
**United States District Judge**